**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Gettus Leroy Mintz,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-13-1543-PHX-SLG (JFM)

**Report & Recommendation**
**on Petition for Writ of Habeas Corpus**

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at San Luis, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on July 29, 2013 (Docs. 1, 4), and an Addendum to Appendix on September 3, 2013 (Doc. 4). On December 10, 2013, Respondents filed their Response ("Limited Answer") (Doc. 9), a Supplemental Response on February 27, 2014 (Doc. 14), and a Second Supplemental Response on May 23, 2014 (Doc. 18). Petitioner filed a Reply on January 2, 2014 (Doc. 10), a Supplemental Reply on March 19, 2014 (Doc. 15) and a Second Supplemental Reply on July 14, 2014 (Doc. 21).

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

/ /

/ /

/ /

1

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

In resolving Petitioner's direct appeal, the Arizona Court of Appeals summarized the factual background as follows:

> The following evidence was presented at trial. In the late evening of February 9, 2009, Officer R. V. of the Peoria Police Department responded to a 9-1-1 hang-up call. As the officer approached the area of 82nd Avenue and Yucca, residents directed him to a bench in the neighborhood. The officer observed an African-American female (P.T.) sitting on a bench "slumped over covered with blood." When Officer R.V. attempted to speak with the victim, she was "unresponsive, her eyes were rolled back and ... [s]he was gurgling blood."
>
> Officer R.V. then followed P.T.'s blood trail to a red car parked a couple of houses away from the bench, which was later determined to be P.T.'s home. The officer observed another African-American woman (A.W.) with blood and lacerations on her face and arms exit the home. The officer later determined that A.W. was P.T.'s mother. A.W. had sustained two injuries to her right shoulder, one to her left scapula, and one to the top of her head. Both victims were treated at the scene and then transported to John C. Lincoln North Hospital.
>
> Doctor M.F. of the Maricopa County Medical Examiner's Office testified that he observed nine stab wounds to P.T.' s body. The doctor further testified that the cause of death was "complications of the multiple stab wounds."
>
> A.W. testified that in the evening of February 9, 2009, she heard a knock on the door and then "someone using the keys to get in the door." Defendant entered the home and A.W. heard P. T. say "Gettus, get what you need." A few moments later, she heard P.T. scream "Mom, Gettus is trying to kill me." A.W. tried to call 9-1-1, but defendant knocked the phone out of her hand and "slam dunked" her on the floor. Defendant then punched A.W.'s head, back and shoulders.
>
> A.W. testified that defendant ran out of the room holding a butcher knife. A.W . again heard P.T . say "somebody help me. Gettus is trying to kill me." A.W. later testified that when she was trying to get up from, the floor, there was a "blade" on the floor.

(Exhibit A, Mem. Dec. at 5.)  (Exhibits to the Answer, Doc. 9, are referenced herein as "Exhibit ___.")

### B. PROCEEDINGS AT TRIAL

On February 19, 2009, Petitioner was indicted in Maricopa County Superior Court on counts of second degree murder and aggravated assault. (Exhibit B,

2

Indictment.)  He proceeded to a jury trial, and was convicted as charged.  (Exhibit C, Verdicts.)  On March 3, 2010, Petitioner was sentenced to an aggravated term of 22 years on the murder charge and a consecutive presumptive term of 20 years on the assault charge.  (Exhibit A, Mem. Dec. at 4; Exhibit D, R.T. 3/3/10 at 20; Exhibit E, Sentence.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal   Counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) and related state authorities indicating an inability to find an issue for appeal.  (Exhibit F.)  Petitioner was granted leave to file a supplemental brief *in propria persona*.  (Exhibit G, Order 9/17/10.)  Petitioner did not file such a brief. (Exhibit A, Mem. Dec. at 2.)

In a decision issued November 30, 2010,[1] the Arizona Court of Appeals related that it had searched the record for "fundamental error" pursuant to *Anders v. California,* 386 U.S. 738 (1967), and *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969). (Exhibit A, Mem. Dec. at 2.) *Anders* provides that an appellate court, faced with appointed counsel's professed inability to find an issue for appeal, should proceed "after a full examination of all the proceedings, to decide whether the case is wholly frivolous." *Anders*, 386 U.S. at 744.   The Arizona Court of Appeals found no "fundamental error," and affirmed Petitioner's convictions and sentences.  (*Id.* at 2, 5.)

Petitioner did not see further review.  (Petition, Doc. 1 at 3.)

## D.  FIRST PROCEEDINGS ON POST-CONVICTION RELIEF

On December 22, 2010, Petitioner filed a Notice of Post-Conviction Relief (Exhibit H), which was dated December 9, 2010.  Counsel was appointed, and ultimately

---

[1] Without explanation, Petitioner's Petition lists the date as December 8, 2010.  (Petition, Doc. 1 at 2.)  No support for that date appears from the record other than a date stamp on the copy attached by Petitioner to the Petition.  (*Id.* at 2-A.)  That copy plainly reflects, however, a filing date of November 30, 2010, as does the copy submitted by Respondents (Exhibit A).

filed a "Notice of Completion" (Exhibit I), evidencing an inability to find a viable issue for review.  Petitioner was granted leave to file a *pro per* petition, and counsel was directed to remain in an advisory capacity.  (Exhibit J, M.E. 6/24/11.)  Petitioner did not timely file his *pro per* petition, and the case was dismissed.  (Exhibit L, M.E. 10/21/11.)

Petitioner then wrote a letter to the PCR court, which was filed November 10, 2011.  The PCR court construed this as a timely motion for rehearing under Arizona Rule of Criminal Procedure 32.9(a), arguing that his failure to file his *pro per* petition should be excused because his legal materials had been confiscated.  The court found that the four months following counsel's filing of the "Notice of Completion" during which Petitioner failed to communicate with the court demonstrate a lack of diligence, and denied the motion.  (Exhibit L, M.E. 11/17/11.)  Petitioner did not seek further review.  (Petition, Doc. 1 at 5.)

## E.  SECOND PROCEEDINGS ON POST-CONVICTION RELIEF

On November 15, 2011, Petitioner commenced a second PCR proceeding by filing his *pro per* Petition (Exhibit M), marking boxes to assert claims of unlawfully seized evidence, ineffective assistance, and conviction by the use of perjured testimony.  Only the latter two were addressed in Petitioner's arguments.  The PCR court directed a response, but observed that the petition was "untimely and successive."  (Exhibit N, M.E. 11/21/01.)

On December 8, 2011, he filed another Petition for Post-Conviction Relief (Exhibit O).  Petitioner characterizes this as a supplement to the November 15, 2011 petition.  (Supp. Reply, Doc. 15 at 5.)  In that petition, Petitioner argued that he was denied a fair trial by the use of perjured testimony.

Petitioner then submitted a Supplement to his PCR Petition.  (Appendix, Doc. 4, Exhibit 1.)

On March 19, 2012, the PCR court consolidated the two PCR petitions for hearing, and found Petitioner's petitions to be successive under Rule 32.1, Arizona Rules

of Criminal Procedure, and that they should be summarily dismissed for failing to identify an applicable exception to the applicable rule.  The court further found that Petitioner's claims of ineffective assistance and perjured testimony were not excepted from the preclusion rule.  The court did not explicitly address the unlawful seizure allegation. (Exhibit P, M.E. 3/19/12.)

On March 28, 2012, Petitioner filed a Petition for Review (Exhibit Q), raising claims of ineffective assistance and prosecutorial misconduct from the use of perjured testimony.  In an Order filed July 17, 2013 (Exhibit R), the Arizona Court of Appeals summarily denied review.  Petitioner did not seek further review.  (Exhibit S, Order and Mandate.)

## F.  PRIOR FEDERAL HABEAS PROCEEDINGS

On September 4, 2012, during the pendency of his petition for review in his second PCR proceeding, Petitioner filed a federal petition for writ of habeas corpus in the District of Arizona, case number CV-12-1868-PHX-SLG-JFM.   On October 15, 2012, the petition was dismissed without prejudice on screening in light of his then on-going petition for review to the Arizona Court of Appeals, citing *inter alia Sherwood v. Tomkins*, 716 F.2d 632, 634 (9th Cir. 1983) and *Schnepp v. Oregon*, 333 F.2d 288 (9th Cir. 1964).  (*Id.* at Order 10/15/12, Doc. 4.)

## G.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on July 29, 2013 (Doc. 1), supplemented by an Appendix (Doc. 4).  Petitioner's Petition asserts the following four grounds for relief:

(1) Ineffective assistance of trial counsel by failure to adequately investigate and to challenge perjured testimony;

(2) ineffective assistance of counsel in his first Rule 32 post-conviction proceeding in

5

violation of the Sixth Amendment by failing to raise meritorious arguments;

(3) ineffective assistance of trial, appellate, and post-conviction counsel by failing to present exculpatory evidence and to challenge false evidence proffered by the prosecution;

(4) prosecutorial misconduct in violation of his Sixth Amendment rights by presentation of perjured testimony.

On September 3, 2013, Petitioner submitted his Addendum to Appendix (Doc. 4) containing additional filings in his second PCR proceeding, submitted in support of Ground Four.

**Response** - On December 10, 2013, Respondents filed their Response ("Limited Answer") (Doc. 9). Respondents argue that Petitioner is not entitled to statutory tolling for his second PCR proceeding because it was untimely, and therefore his Petition is barred by the habeas statute of limitations. Respondents further argue that to the extent that Petitioner presented his claims in his first PCR or second PCR proceeding, they were procedurally barred on an independent and adequate state ground, and to the extent not presented they are now procedurally defaulted.

**Reply** - On January 2, 2014, Petitioner filed a Reply (Doc. 10). Petitioner argues that his present Petition is not untimely because he filed his original habeas petition within the limitations period, and that he is entitled to statutory and equitable tolling for the time between the dismissal of his first habeas petition and the instant petition. (*Id.* at 2-6.) Petitioner argues that any procedural default should be excused because the "cause" of that default was: (1) his uneducated, *pro se* status, and the lack of prison legal resources; (2) that prisoners are denied due process because court appointed appellate and PCR counsel file briefs asserting an inability to find issues for review; and (3) his appellate and PCR counsel were ineffective. He further asserts prejudice by arguing the merits of his claims.

**Order for Supplements** - On February 6, 2014, the Court observed that the timeliness of the Petition appeared to depend on whether his second PCR proceeding

was timely and thus properly filed, and that the PCR court's actual decision appeared to be based on grounds other than timeliness.  The Court also observed that Respondents procedural default argument was based, in part, on the conclusion that Petitioner's claims had not been the fairly presented to nor decided by the Arizona Court of Appeals. However, in Petitioner's direct appeal, the Arizona Court of Appeals had conducted a review for fundamental error after counsel filed an *Anders* brief, raising the question whether such review resulted in exhaustion.  The parties were directed to supplement their briefs to address these issues. (Order 2/6/14, Doc. 13.)

**Supplemental Response** – On February 27, 2014, Respondents filed their Supplemental Response (Doc. 14), arguing that the PCR court's initial characterization of the second PCR petition as "untimely" is conclusive, and that the third petition was thus necessarily untimely.  Respondents further argue that Ninth Circuit precedent and precedent from the District of Arizona concludes that a review for fundamental error does not result in exhaustion, and that the principles and policies behind the exhaustion requirement militate against finding exhaustion from such review following an *Anders* brief.

**Supplemental Reply** – On March 19, 2014, Petitioner filed his Supplemental Reply (Doc. 15).  Petitioner argues that the dismissal of his first PCR proceeding resulted from PCR counsel's failure to file a brief, and his *pro se* status, that he diligently pursued filing a second PCR proceeding as suggested by the PCR court, and his "third" PCR petition was a supplement to his second petition.   Petitioner further argues that the claims raised in his second PCR proceeding were of the type not waivable but by a personal waiver.  Petitioner argues that his first federal habeas petition was timely, and thus renders the instant petition timely.  Petitioner further argues that he fairly presented his federal claims in his PCR petitions.

**Orders for Second Supplemental Responses** – On April 28, 2014, the Court ordered (Doc. 16) Respondents to supplement their response and the record to address: (a)  whether a failure by the Arizona Court of Appeals to conduct a review pursuant

*Anders v. California,* 386 U.S. 738 (1967) established cause for Petitioner's failure to properly exhaust his state remedies on Ground Four of the Petition; and (b) whether ineffective assistance of PCR counsel would establish cause for failure to exhaust claims of ineffective assistance of appellate counsel in Ground Three.

On May 9, 2014, the Court ordered (Doc. 17) Respondents to supplement their response to address whether the dismissal without prejudice of Petitioner's first federal habeas petition for failure to exhaust state remedies was proper given that the only proceedings then pending were PCR proceedings, and if so whether Petitioner would be entitled to equitable tolling for the intervening time between his two federal habeas petitions.

Leave was granted to combine the two supplements.

**Second Supplemental Response** – On May 23, 2014, Respondents filed their second Supplemental Response (Doc. 18).   Respondents argue that: (1) none of Petitioner's claims in his first federal habeas petition were exhausted when the petition was dismissed, and consequently Petitioner is not entitled to equitable tolling for the pendency of that petition until the filing of the instant petition (*id.* at 4-5); (2) the Arizona Court of Appeals complied with *Anders*, Petitioner failed to assert cause to excuse his procedural default in his habeas petition, an insufficient *Anders* review would not establish cause, and Petitioner's *Anders* claim is procedurally defaulted (*id.* at 5-8); (3) the *Martinez* exception for claims of ineffective assistance of PCR counsel as cause only applies to failures to assert the ineffectiveness of trial counsel, and not to the claim of prosecutorial misconduct in Ground Four (*id.* at 8-12).

**Second Supplemental Reply** – On July 14, 2014, Petitioner filed his second Supplemental Rely (Doc. 21).   Petitioner argues that: (1) he is entitled to equitable tolling from the time of the filing of his first federal habeas petition (*id.* at 1-3); (2) the state appellate court's limited review for fundamental error was improper and thus his state remedies should be deemed exhausted (*id.* at 4); and (3) his claims of prosecutorial misconduct have substantial merit.

### III. APPLICATION OF LAW TO FACTS

#### A. TIMELINESS

#### 1. One Year Limitations Period

Respondents assert that Petitioner's Petition is untimely.  As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts.  28 U.S.C. § 2244(d).  Petitions filed beyond the one year limitations period are barred and must be dismissed.  *Id.*

#### 2. Commencement of Limitations Period

**Conviction Final** - The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[2]

Here, Petitioner's direct appeal remained pending through November 30, 2010, when the Arizona Court of Appeals denied his Petition for Review.  (Exhibit A, Mem. Dec.)  Thereafter, Petitioner had 30 days to seek review by the Arizona Supreme Court.  Ariz. R. Crim. P. 31.19(a)  He did not do so.  Accordingly, his conviction became final on December 30, 2010, 30 days after the Arizona Court of Appeals denied his appeal.

**Conclusion re Commencement** - Therefore, Petitioner's one year began running on December 31, 2010, and without any tolling expired on December 31, 2011, making his July 29, 2013 Petition almost 18 months delinquent.[3]

---

[2]  Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims.  *See* 28 U.S.C. § 2244(d)(1)(B)-(D).  Except as discussed hereinafter, Petitioner proffers no argument that any of these apply.

[3]  Petitioner's habeas Petition is dated July 25, 2013. (Petition, Doc. 1 at 11.)  Even if this Court were to find that the Petition should be deemed filed as of that date rather than July 29, 2013, the four days would not be sufficient to make Petitioner's Petition timely.

**3. Statutory Tolling**

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

**Tolling for First PCR Proceeding** - Petitioner's limitations period commenced running on December 31, 2010. However, Petitioner's first PCR proceeding was commenced on December 22, 2010, before his limitations period began running. It remained pending until October 21, 2011, when the PCR court dismissed the proceeding. (Exhibit K, M.E. 10/21/11.)

Thereafter, Petitioner submitted a letter on November 10, 2011, which the PCR court construed as a "motion for reconsideration" (or rehearing) "pursuant to Ariz. R. Crim. P. 32.9(a)." (Exhibit L, M.E. 11/17/11 at 1.) The PCR court found the "motion" "timely," but ultimately denied it, concluding that the opposition to the court's dismissal of the proceeding for failure to timely file a pro per petition was untenable, because Petitioner "did not pursue his post-conviction relief rights diligently." (*Id.* at 2.) Although dated November 17, 2011, that "minute entry" ruling was not filed until November 22, 2011. There is no indication that the ruling was made in open court or was otherwise issued prior to its filing on November 22, 2011. Thus, because it does not affect the outcome, the undersigned presumes that Petitioner's first PCR proceeding remained pending through November 22, 2011.

Thus, without additional tolling, Petitioner's one year would have commenced running no later than November 23, 2011, and would have expired one year later, on November 22, 2012.[4] Without further tolling, his July 29, 2013 petition would have been over eight months delinquent.

**Tolling for Second PCR Proceeding** - Respondents argue that Petitioner is not entitled to any tolling for his second PCR proceeding, asserting that it was dismissed as

---

[4] Respondents calculate the expiration as October 28, 2012 by tolling for the additional seven days between Petitioner's filing his PCR notice and when his conviction became final. The limitations period cannot be tolled when it is not yet running.

10

untimely, and thus was not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2). It is true that a state petition dismissed as untimely is not "properly filed," and thus does not toll the habeas statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

No Final Ruling of Untimeliness - It is also true that the PCR court initially described the second petition as "untimely and successive" in its order requiring the state to respond. (Exhibit N, M.E. 11/21/11.)  However, a preliminary determination by the Arizona PCR court that a petition is "untimely" is not a finding that the petition is not properly filed.  Rather, Arizona's Rule 32.4 adopts a series of primary deadlines (e.g. 30 days after direct appeal for non-pleading defendants).  The rule then goes on to except from those time limits petitions which raise claims of particular types or on particular bases (i.e. under Arizona "Rule 32.1(d), (e), (f), (g) or (h)").  Ariz. R. Crim. P. 32.4(a). Thus, without addressing the nature of the claims submitted, or the reasons for its late submission, the Arizona PCR court cannot determine whether the petition has been properly filed.  Denomination of the petition as "untimely" is nothing more than an observation that it has been filed outside the normally applicable deadline.  Thus, as in this instance, the PCR court faced with a filing outside the timeline, may denominate the filing "untimely", and yet proceed to direct briefing to assist in resolving whether the claim is nonetheless properly filed.  (*See* Exhibit N, M.E. 11/21/11.)

Here the PCR court did not ultimately dismiss Petitioner's second PCR proceeding as untimely, but on the basis that the claims were precluded.  (*See* Exhibit P, M.E. 3/19/12.)  The PCR court referred to the petition as "successive" and referenced the waiver bar in Ariz. R. Crim. P. 32.2(a)(3), and the allowance of exceptions in Rule 32.2(b).

In contrast, the PCR court's dismissal order made only four references to timeliness:  (1) that the first PCR notice was "timely," but his first *pro per* petition was filed after the granted extension of "time" expired (Exhibit P, M.E. 3/19/12 at 1); (2) in quoting the requirement of specific pleading of an exception in Rule 32.2(b) for a

"successive or untimely post-conviction relief proceeding" (*id.* at 3); (3) in again noting that Petitioner had failed "to timely file" his first PCR petition (*id.* at 3); and (4) noting his failure to show "good cause for failing to timely file his first petition" (*id.*). All but the second reference were addressed to his delinquent petition in his first PCR proceeding, not his petitions in the second PCR proceeding. The second reference is not a finding that the second proceeding was untimely, but merely a quotation from Arizona's preclusion rule, Rule 32.2, which the court was explicitly applying.

In *Evans v. Chavis*, 546 U.S. 189 (2006), the Court considered the import of a summary decision by the California courts rejecting review of a post-conviction petition. That analysis was somewhat complicated by the indeterminate, "reasonable time" standard applicable in California to such petitions. However, the Court rejected the Ninth Circuit's determination to always treat such silent decisions as a decision on the merits, and instead instructed that the federal habeas court should "examine the delay in each case and determine what the state courts would have held in respect to timeliness." *Id.* at 852. Similarly, in *Carey v. Saffold,* 536 U.S. 214 (2002), the Court found that a ruling "on the merits and for lack of diligence" might or might not signal a finding of untimeliness of the California petition, and directed the Ninth Circuit to evaluate the relevant considerations to determine whether the reference to "lack of diligence" was a finding of untimeliness.

Here, of course, the PCR court's decision is neither silent nor ambiguous for its basis for disposing of Petitioner's petition. It plainly found only that the petition was successive, and made no finding of untimeliness.

PCR Actually Untimely - But the instruction of *Saffold* and *Evans* is that a ruling on the timeliness issue by the state court is not required. Indeed, in *Saffold,* the Court concluded that a ruling stated to be "on the merits" is not conclusive that the petition was deemed timely.

> A court will sometimes address the merits of a claim that it believes was presented in an untimely way: for instance, where the merits present no difficult issue; where the court wants to give a reviewing

12

court alternative grounds for decision; or where the court wishes to show a prisoner (who may not have a lawyer) that it was not merely a procedural technicality that precluded him from obtaining relief. Given the variety of reasons why the California Supreme Court may have included the words "on the merits," those words cannot by themselves indicate that the petition was timely.

*Saffold*, 536 U.S. at 225-26.  Thus, in *Evans* the Court concluded that "[i]n the absence of…clear indication that a particular request for appellate review was timely or untimely, the Circuit must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness."  546 U.S. at 198.  (Of course, a clear direction or explanation from the state court that it had found the application timely or untimely "would be the end of the matter."  *Evans*, 546 U.S. at 205 (quoting *Saffold*, 536 U.S. at 226.).)

Thus, faced with the absence of a clear ruling by the Arizona court that the petition was timely or untimely, this Court must "itself examine the delay…and determine what the state courts would have held with respect to timeliness."  That question is simplified by the rulings that the PCR court did make.

First, the PCR court did find, in its initial evaluation, that the second PCR petition was "untimely," that is outside the normal time limits.  (*See* Exhibit N, M.E. 11/21/11.) As Respondents point out, if the second PCR petition was outside the normal time limits, then the later filed third Petition would be as well.  Petitioner argues that the third petition was really just a supplement to his second petition. (Supplemental Reply, Doc. 15 at 5.) If this construction were adopted, then the one petition, his second, would be subject to PCR court's preliminary determination of untimeliness.

Second, in deciding that the combined petitions did not meet the requirements for a successive petition, the PCR court determined that the petitions did not present claims covered by Ariz. R. Crim. P. 32.1(d), (e), (f), (g) or (h).  These are the same exceptions under which an otherwise untimely claim may be brought under Rule 32.4(a).  The PCR court summarized Petitioner's claims into claims of ineffective assistance and use of perjured testimony.  The court found "ineffective assistance of counsel does not fall within any of the Rule 32.1 exceptions."  (Exhibit P, M.E. 3/19/12 at 3.)  It further found

the perjury claims outside the exceptions:

> Similarly, defendant's claim that the State secured his conviction by perjured testimony does not fall within any exception. It is not newly discovered evidence because the defendant knew about the alleged perjury at the time of trial.

(*Id.*)

Even if this Court could avoid those determinations, Petitioner fails to show that the claims asserted in his second and third PCR petitions fit within any applicable exception.

Rule 32.1(d) governs claims of custody after expiration of a sentence.  That does not apply to Petitioner's PCR claims.

Rule 32.1(e) governs claims of newly discovered material facts which would have changed the verdict or sentence.  The claims of ineffective assistance did not involve such facts.  The claims of perjury were, as determined by the PCR court "not newly discovered evidence because the defendant knew about the alleged perjury at the time of trial."  (Exhibit P, M.E. 3/19/12 at 3.)

Rule 32.1(f) only applies to a failure to file a notice of post-conviction relief of right, following a guilty plea, or a notice of appeal.  Petitioner did not plead guilty, and his appeal was timely filed.

Rule 32.1(g) does not apply because the claims in the second and third PCR petitions were not founded upon a "significant change in the law."

Rule 32.1(h) does not apply because Petitioner's second and third PCR petitions were not founded upon a claim that "no reasonable fact-finder would have found Petitioner guilty beyond a reasonable doubt."

Thus, none of the exceptions would have applied, and the second and third PCR petitions would have been ruled untimely by the Arizona courts had they addressed the issue.

Accordingly, Petitioner is not entitled to any statutory tolling for the pendency of his second and third PCR petitions.

**Federal Habeas Petition** – Petitioner filed his first federal Petition for Writ of Habeas Corpus on September 4, 2012, during the pendency of his petition for review in his second PCR proceeding.  On October 15, 2012, the petition was dismissed without prejudice on screening on the basis that in light of his then on-going petition for review to the Arizona Court of Appeals, Petitioner's state remedies were unexhausted.  (*Id.* at Order 10/15/12, Doc. 4.)

Petitioner argues that the dismissal of his habeas petition was "without prejudice." (Supp. Reply, Doc. 15 at 11.)   The case was, nonetheless, dismissed and no longer remained pending after October 15, 2012.   The lack of prejudice left open the opportunity for Petitioner to re-file, but it did not leave the case pending in the interim.

Moreover, the statutory tolling provision under 28 U.S.C. § 2244(d) only applies to state proceedings, not to federal proceedings.  *Duncan v. Walker*, 533 U.S. 167 (2001).  Accordingly, Petitioner is not entitled to statutory tolling for the pendency of that federal proceeding.

**Summary re Statutory Tolling** - Taking into account the available statutory tolling, Petitioner's one year habeas limitations period commenced running on November 23, 2011, and expired on November 22, 2012, making his July 29, 2013 Petition over eight months delinquent.

**4.  Equitable Tolling**

**a.  Applicable Standard** - "Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'"  *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the

extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted).  "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.' " *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002)  (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.).  Petitioner bears the burden of proof on the existence of cause for equitable tolling.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

**b.  Untrained, *Pro se*  Status** – Petitioner argues that he is entitled to equitable tolling because he was proceeding *pro se* and was untrained in the law. (2nd Supp. Reply, Doc. 21 at 3.)

"It is clear that *pro se* status, on its own, is not enough to warrant equitable tolling." *Roy v. Lampert,*  465 F.3d 964, 970 (9th Cir. 2006).  A prisoner's "proceeding *pro se* is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim."  *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000).

With regard to Petitioner's lack of legal prowess, "a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." *Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006).   "[I]gnorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing." *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir.1999).

**c.  Dismissal of First Habeas Petition Not a Basis for Equitable Tolling** - Petitioner argues that he is entitled to equitable tolling for the time between the dismissal of his first habeas petition, on October 15, 2012, for failure to exhaust state remedies, and the instant petition.  (Reply, Doc. 10 at 5.)

**Dismissal as Unexhausted Would Have Been Proper** - The Ninth Circuit has recognized grounds for equitable tolling when the district court dismisses a first, timely, habeas petition on the basis of failure to exhaust, where the petition was a "mixed" petition that contained both properly exhausted claims and unexhausted claims, and the petitioner was not granted leave to amend his petition to omit the unexhausted claims. *See e.g. Butler v. Long*, 752 F.3d 1177, 1180 (9th Cir. 2014).

But here, Petitioner has proffered nothing to show that his first habeas petition was a "mixed" petition, requiring the option of an amend-and-stay procedure, such as that discussed in *Henderson, supra*. Indeed, ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005) (quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)). Petitioner had not had any claims ruled on by the Arizona Court of Appeals at the time his first habeas petition was dismissed.

In fact, the only ruling by the Arizona Court of Appeals in Petitioner's case was the determination that, after a review for fundamental error following an *Anders* appellate brief, the court found no such error. (Exhibit A, Mem. Dec. 11/30/10.)

*Anders* Review Did Not Exhaust – The Arizona Court of Appeals' search for error pursuant to *Anders* in Petitioner's direct appeal did not result in exhaustion.

It is true that the Ninth Circuit has held that the federal habeas petitioner has exhausted his state court remedies when the state court can be presumed to have considered his constitutional claims as part of a mandated review for specified error, even if the petitioner failed to raise the claims before the state court. *Beam v. Paskett*, 3 F.3d 1301 (9th Cir.1993), *cert. denied*, 114 S.Ct. 1631 (1994), overruled on other

grounds, *Lambright v. Stewart*, 191 F.3d 1181, 1187 (9th Cir. 1999).[5]

In their Supplemental Response, Respondents address this issue by arguing that an *Anders* brief cannot be a fair presentation of an issue.  (Doc. 14 at 4.)  However, the prerequisite to habeas review is not "fair presentation," but that "the applicant has exhausted the remedies available."  28 U.S.C. § 2254(b)(1)(A).  Fair presentation is but one, albeit the most common, means to exhaust state remedies.  Actual consideration by the state court is another. See *Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of exhaustion than a state court's actual consideration of the relevant constitutional issue"); *see also Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir.1990) (state court's sua sponte consideration of an issue satisfies exhaustion).

With their view of exhaustion limited to "fair presentation," Respondents point to *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) for the proposition that "the filing of a global request to review the record is insufficient for exhaustion."  (Supp. Resp., Doc. 14 at 4.)  However, *Castillo* did not involve a mandated review of the record, and the means for exhaustion applicable in that case was fair presentation, not actual consideration.

Indeed, it was on actual consideration that *Beam* turned.  Here, if the state court applying *Anders* is deemed to have actually considered the merits of all of the

---

[5] The courts have been reticent to expand *Beam*.  *See  Martinez-Villareal v. Lewis*, 80 F.3d 1301 (9th Cir. 1996), *cert. denied*, 519 U.S. 1030 (1996) (refusing to extend *Beam* to Arizona's statutory review for fundamental error in death penalty case); *Michael Poland v. Stewart*, 117 F.3d 1094 (9th Cir. 1997) (same); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) (same); *Moorman v. Schriro*, 426 F.3d 1044, 1057 (9th Cir. 2005); *Hoffman v. Arave*, 973 F. Supp. 1152, 1158 at Note 1 (D. Idaho 1997) (commenting that *Beam* was "wrongly decided"); *Sechrest v. Ignacio*, 943 F.Supp. 1245, 1249-50 (D. Nevada 1996) (characterizing the discussion in *Beam* on the "exhaustion" effect of the state mandatory review statute as *obiter dicta*); *Banks v. Horn*, 49 F.Supp.2d 400, 407 (M.D. Penn. 1999) (declining to apply *Beam*, and rejecting "the notion that [a reviewing court] is responsible for detecting all errors of constitutional magnitude on direct appeal"); *Bennett v. Angelone*, 92 F.3d 1336 (4th Cir. 1996) (discussing *Beam* analysis, but avoiding by denying claims on the merits); *Wortaceck v. Lewis*, 863 F.Supp. 1079, 1095 (D. Arizona 1994), *affirmed on other grounds* 97 F.3d 329, *cert. denied* 520 U.S. 1173, *reh'g denied* 520 U.S. 1260 (distinguishing the Idaho statute in *Beam* from Ariz. R. Crim. P. Rule 31.2 mandating review of capital cases).

petitioner's potential claims, then his state remedies on those claims are exhausted, regardless whether he fairly presented them.

The undersigned is currently aware of only one published decision considering the exhaustion effect of a review for error pursuant to *Anders*.  In *McCoy v. Newsome*, 626 F.Supp. 374 (M.D. Georgia 1986), the appellate counsel filed a motion to withdraw as counsel pursuant to *Anders*.  The motion was granted and the conviction affirmed.  The petitioner subsequently sought habeas relief on a laundry list of issues, and the state moved to dismiss for failure to exhaust.  After finding that the state appellate court had conducted a review of the record for error, the *McCoy* court concluded: "The state courts have thus had the opportunity to review all petitioner's claims arising from his trial." *McCoy*, 626 F.Supp. at 376.  *See McCoy v. Newsome*, 953 F.2d 1252, 1257 (11th Cir. 1992) ("the district court found that grounds two through eleven were exhausted when the Georgia Court of Appeals conducted an independent examination of the trial record for any reversible error pursuant to the *Anders* petition").

For the following reasons, the undersigned does not find *McCoy* persuasive that *Beam's* finding of exhaustion applies to review under *Anders*.

In *Poland v. Stewart*, the Ninth Circuit distinguished *Beam* in an Arizona case involving a review for fundamental error in capital cases.  117 F.3d 1094 (9th Cir. 1997).  The *Poland* court observed that *Beam* involved an Idaho state which required the state supreme court to review capital cases "to determine if certain errors were present," and the Ninth Circuit had simply "presumed that the Idaho court had performed its statutory duties," and considered the specified issues. *Id.* at 1106.  As a result, "claimed errors coming within the Idaho statutory command were not procedurally barred though not raised in state court." *Id.*  The *Poland* court observed that Arizona's mandate for review of capital cases did not specify any particular claims.

Similarly, here, the Arizona Court of Appeals had no duty to review for "certain errors."  Rather, it was simply an open-ended mandate to "decide whether the case is wholly frivolous." *Anders*, 386 U.S. at 744.  *See also State v. Leon*, 104 Ariz. 297, 451

P.3d 878 (1969) (applying *Anders*).

Respondents and apparently some courts have applied a short hand of describing review under *Anders* and *Leon* as a search for "fundamental error."  (*See e.g.* Supp. Resp., Doc. 14 at 4.)  Indeed, Petitioner's appellate counsel's *Anders*  brief beseeched the appellate court to "search the record for fundamental error."  (Exhibit F, Opening Brief at 11.)  If such references could be found to be a designation of specific errors to be examined, then perhaps *Beam* would mandate a finding of actual consideration and thus exhaustion.  However, neither *Anders* nor *Leon* used such a term nor employed any limitation on the type of error for which a reviewing court should search.

It appears that this nomenclature derives in part from a now-repealed statute, and the Arizona limitation on errors reviewable when no objection has been raised at trial.  The former was Ariz. Rev. Stat. § 13-4035 which required the Arizona Court of Appeals to search every appellate record for "fundamental error."  That requirement was repealed in 1995.  *See State v. Smith*, 184 Ariz. 456, 459, 910 P.2d 1, 4 (1996).  Perhaps the confusion resulted from the tendency of the Arizona Courts to reference review under *Anders/Leon* and § 13-4035 in a single cryptic determination with a finding that there was no "fundamental error."  *See e.g. State v. Perea*, 142 Ariz. 352, 359, 690 P.2d 71, 78 (1984).

The latter source for the term "fundamental error" is the waiver limitation applied by the Arizona appellate courts to objections not raised at trial.  Indeed, in denying Petitioner's direct appeal, the Arizona Court of Appeals stated:

> We review for fundamental error, error that goes to the foundation of a case or takes from the defendant a right essential to his defense. *See State v. King*, 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988).

(Exhibit A, Mem. Dec. 11/30/10 at 2.)  The referenced decision of the Arizona Supreme Court, *King*, did not concern the mandated review under *Anders*.  Rather, *King* involved the consideration of a raised claim of instructional error which had not been asserted at trial.  Finding that a failure to object resulted in a waiver, the court found its review of the claim limited to a search for "fundamental error," which it defined:

> Error is fundamental when it reaches " 'the foundation of the case or takes from the defendant a right essential to his defense,' " or is an " 'error of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial.' "

*King*, 158 Ariz. at 424, 763 P.2d at 244 (citations omitted). Thus, *King* was not a limitation on *Anders* review, and would have no application where, for example, an objection had been raised at trial but appellate counsel had not argued the point and instead filed an *Anders* brief.

Thus, the reference to "fundamental error" in the denial of Petitioner's direct appeal cannot be presumed to be the application of a specified list of errors to be examined, but rather as a recognition of a limitation on the types of error on which the court could grant relief if an objection had not been raised at trial.

The undersigned is not convinced that no Arizona court or litigant has ever conflated the *King* standard with the contours of review mandated under *Anders* and *Leon*.   Nor is the undersigned convinced that the Arizona Court of Appeals did not do so in this instance.[6]

What cannot be said, however, is that even had the Arizona Court of Appeals believed its review was limited to "fundamental error," that such review was sufficiently prescribed and narrow as to create a presumption that the state court actually considered any specific constitutional claims.   To the contrary, under the *King* formulation, such review is not a search for specific types of claims or errors, but of errors with a certain level of prejudicial impact.   That left no basis for this Court to have concluded in evaluating Petitioner's first habeas petition that his state remedies on the claims raised in that petition were already exhausted.

Thus, the habeas court correctly concluded that Petitioner's state remedies were not properly exhausted as to any of his claims, and the dismissal of his first habeas proceeding on that basis was not improper.

---

[6] The undersigned observes that although Petitioner complains that counsel was deficient in filing an *Anders* brief (Reply, Doc. 10 at 7-8), he asserts no claim in this proceeding that he was denied equal protection under *Anders* as a result of an improperly limited review of his direct appeal by the Arizona Court of Appeals.

**Dismissal on Basis of Pending PCR Proceeding Proper** -   The federal courts have also recognized a basis for equitable tolling where a petitioner's first federal petition is dismissed and the district court has affirmatively misled the petitioner, resulting in the intervening incursion of the habeas limitations bar.  However, in *Ford v. Pliler*, the Ninth Circuit found that equitable tolling would result only if there was some "affirmative misstatement" by the district court which prevented the Petitioner from making a timely filing after the dismissal.  590 F.3d 782, 788 (9th Cir. 2009).  *See also Pliler v. Ford*, 542 U.S. 225 (2004) (holding district courts have no obligation to advise habeas petitioners on statute of limitations and exhaustion issues at the time of a dismissal for failure to exhaust, but remanding for a determination whether the petitioner had been affirmatively misled by the court).

Although, in dismissing his first habeas proceeding the District Court properly noticed that Petitioner was required to have exhausted his state remedies, citing *inter alia* 28 U.S.C. § 2254(b)(1), the court also went on to cite two Ninth Circuit cases, *Sherwood* (direct appeal pending) and *Schnepp* (post-conviction proceeding pending), finding that the pendency of on-going state proceedings on a conviction meant "the federal exhaustion requirement is not satisfied."  (CV-12-1868-PHX-SLG-JFM, Order 10/15/12, Doc. 4 at 3.)

In *Sherwood v. Tomkins*, 716 F.2d 632 (9th Cir. 1983), the Ninth Circuit held that "even if the federal constitutional question raised by the habeas corpus petitioner cannot be resolved in a pending state appeal, that appeal may result in the reversal of the petitioner's conviction on some other ground, thereby mooting the federal question…[thus the petitioner's] claim is premature, and must be dismissed for failure to exhaust state remedies." *Id.* at 634.

Similarly, in *Schnepp v. Oregon*, 333 F.2d 288 (9th Cir. 1964) (*per curiam*), the court held:  "According to allegations contained in the application, Schnepp now has a post conviction proceeding pending in the courts of Oregon, and therefore has not exhausted his presently-available state remedies, this being a condition precedent to the

granting, by a federal court, of an application by a state prisoner for a writ of habeas corpus." *Id.* at 288.

It is true that in *Henderson v. Johnson*, 710 F.3d 872, 874 (9th Cir. 2013), the Ninth Circuit issued a terse opinion distinguishing *Sherwood* from a case involving a pending state habeas petition, and a federal petition containing a mix exhausted and unexhausted claims.

> *Sherwood* is distinguishable, and the district court erred as a matter of law by dismissing Henderson's petition. *Sherwood* stands for the proposition that a district court may not adjudicate a federal habeas petition while a petitioner's direct state appeal is pending. 716 F.2d at 634 ("When, as in the present case, an appeal of a state criminal conviction is pending, a would-be habeas corpus petitioner must await the outcome of his appeal before his state remedies are exhausted...."). Although district courts cannot adjudicate mixed petitions, *Sherwood* does not undermine the important precedent requiring district courts first to grant leave to amend and, if requested, to consider a petitioner's eligibility for a stay under *Rhines*, 544 U.S. at 275–77, 125 S.Ct. 1528 (stay of entire petition), or under *Kelly*, 315 F.3d at 1070–71 (stay of exhausted claims only). The district court erred by failing to allow Henderson leave to amend her petition before dismissal, and by refusing to address Henderson's request for relief under *Rhines* or *Kelly*.

*Henderson*, 710 F.3d at 874.  At least one court has concluded that *Henderson* limited *Sherwood* to cases involving pending direct appeals, and excluded it from applying to pending post-conviction proceedings.  *See Smith v. Williams*, 2013 WL 1501583, 2 (D.Nev. 2013) (finding *Henderson* clarified "that the rule [of] *Sherwood* applies to pending direct appeals, and not to pending state post-conviction proceedings").  And, here, at the time Petitioner's first habeas proceeding was dismissed, his direct appeal had long been terminated, and it was only his state post-conviction relief petition which was pending.

However, the heart of *Henderson* was not to discern the type of pending state proceedings that would justify a dismissal, but to find that it was improper to dismiss the mixed petition without first granting leave to amend and/or considering a request for a stay.  Viewed in that light, it would make little difference whether the pending proceeding were a direct appeal or a post-conviction collateral attack, since either kind of

pending proceeding would leave open the potential of an available state remedy which would indicate claims were unexhausted.

Similarly, in *Phillips v. Vasquez*, 56 F.3d 1030 (9th Cir. 1995) the Court treated its decision in *Sherwood* as a matter of jurisprudential concern to not waste judicial resources resolving a habeas petition that might be rendered moot by a still pending state proceeding.[7] If *Sherwood* is thus viewed as a matter of jurisprudential management, the nature of the pending state proceeding would be irrelevant.

Moreover, nothing in *Henderson* explicitly addressed the holding in *Schnepp* that a pending post-conviction proceeding called for a dismissal.

Respondents argue in their Second Supplemental Response that the controlling circumstance is the conclusion that Petitioner's state remedies on his claims were all unexhausted, and thus his petition was not a "mixed" petition.  (Doc. 18 at 4-6.)

But, neither *Sherwood* nor *Schnepp* were founded upon a determination that state remedies had been exhausted on particular claims.  Indeed, the mandate for exhaustion of state remedies in 28 U.S.C. § 2254(b)(1) is not a claim specific mandate, but a blanket requirement that any available state remedies be exhausted.  It is true that § 2254(c) goes on to direct that exhaustion cannot be found if there are state remedies available to address "the question presented" in the habeas petition.  Similarly, the judicial principle of procedural default (barring habeas consideration of claims technically exhausted because of a procedural default) is applied on a claim by claim basis.  "Only individual *claims*, and not the application containing those claims, can be procedurally defaulted under state law."  *Pace v. DiGuglielmo*, 544 U.S. 408, 424 (2005) (emphasis in original) (quoting *Artuz v. Bennett*, 531 U.S. 4, 9 (2000)).

But, *Sherwood* explicitly rejected the contention that exhaustion of state remedies on the challenged claims was sufficient:

---

[7] The *Phillips* court also analyzed whether abstention under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971) was required, concluding it was not since relief on the conviction in the federal proceeding attacking the conviction would not enjoin the ongoing state proceeding on the sentence, even though it might moot it by invalidating the conviction.  56 F.3d at 1034.

> However, even were Sherwood to have exhausted all his state remedies with respect to the denial of his appointed counsel and free transcript request, that would not be enough to satisfy the requirements of 28 U.S.C. §§ 2254(b) and (c). When, as in the present case, an appeal of a state criminal conviction is pending, a would-be habeas corpus petitioner must await the outcome of his appeal before his state remedies are exhausted, even where the issue to be challenged in the writ of habeas corpus has been finally settled in the state courts.

*Sherwood*, 716 F.2d at 634.

That is not to say that the presence of properly exhausted claims is irrelevant. Indeed, the question addressed by *Henderson* was whether, even though a dismissal is required under 28 U.S.C. § 2254(b) because of a pending state proceeding, the habeas court is nonetheless required to consider a stay because state remedies have been exhausted on some of the petitioner's claims. Here, however, Petitioner has proffered nothing to show that, at the time of the dismissal of his first federal habeas petition his state remedies were properly exhausted as to any of his claims.

Finally, *Henderson* was not decided until January 3, 2013, more than two months after the district court had dismissed Petitioner's first federal habeas petition on October 24, 2012. Thus, even assuming *Henderson* worked a narrowing of *Schnepp*, that decision was unavailable to the district court in dismissing Petitioner's first habeas petition, and thus the court did not affirmatively mislead Petitioner as to the then applicable law.

Thus, there is no basis to conclude that the district court affirmatively misled Petitioner in relying on *Sherwood* and *Schnepp* as part of its decision to dismiss Petitioner's first federal habeas petition.

**Conclusion** – Petitioner has failed to show that he is entitled to equitable tolling as a result of the dismissal of his first habeas petition.

## 5. Actual Innocence

To avoid a miscarriage of justice, the habeas statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude "a court from entertaining an untimely first federal habeas

petition raising a convincing claim of actual innocence." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013).   To invoke this exception to the statute of limitations, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).   This exception, referred to as the "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' " *Id.*   at 1936 (quoting *Schlup,* 513 U.S. at 316).

Petitioner makes no such claim of actual innocence in this proceeding.

### 6.  Summary re Statute of Limitations

Taking into account the available statutory tolling, Petitioner's one year habeas limitations period commenced running on November 23, 2011, and expired on November 22, 2012, making his July 29, 2013 Petition over eight months delinquent. Petitioner has failed to show grounds for equitable tolling, and makes no claim or showing of actual innocence to avoid the statute of limitations.

Accordingly, the Petition must be dismissed with prejudice as barred by the habeas statute of limitations.

### B.  EXHAUSTION & PROCEDURAL DEFAULT

Respondents argue that Petitioner's claims are either procedurally defaulted or were procedurally barred on an independent and adequate state ground, and thus are barred from federal habeas review.  Because the undersigned concludes that Petitioner's claims are barred by the statute of limitations, and evaluation of the exhaustion issues, including allegations of cause and prejudice involve expansive analysis, including consideration of underlying claims of ineffective assistance and the related substantive claims, these additional defenses are not reached.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on procedural grounds. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling.

Accordingly, to the extent that the Court adopts the reasoning of this Report &

Recommendation as to the Petition, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed July 29, 2013 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.  Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: October 2, 2014

James F. Metcalf
United States Magistrate Judge